UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____/_____

SIDE, INC., a Delaware corporation,

    Plaintiff,

v.

OFFICIAL PARTNERS NEW YORK, LLC, a
New York limited liability company, TAL
ALEXANDER, an individual, and OREN
ALEXANDER, an individual,

    Defendants.

_____/

**COMPLAINT FOR DOMESTICATION AND ENFORCEMENT OF CALIFORNIA
PRELIMINARY INJUNCTION UNDER DOCTRINE OF COMITY**

Plaintiff Side, Inc. ("Side" or "Plaintiff"), files suit against defendants Official Partners New York, LLC ("Official Partners"), Tal Alexander ("Tal") and Oren Alexander ("Oren"; collectively "Defendants") and alleges as follows:

**Introduction and Background of the Underlying California Action**

1. This action seeks adoption and enforcement in Florida of a temporary injunction (the "California Preliminary Injunction") issued by the United States District Court for the Northern District of California,[1] San Francisco Division ("the California Court"), on December 19, 2024, freezing assets owned by Defendants pursuant to a lawsuit filed by Side (the "California

---

[1] The underlying action filed in the Northern District of California is captioned *Side, Inc. v. Official Partners New York, LLC, et al.*, Case No. 24-cv-07135-WHO (N.D. Ca. October 11, 2024).

79383742;1

Lawsuit") against the Defendants for breach of an Amended and Restated Secured Promissory Note (the "Note").

2.  Pursuant to the Note, Official Partners as the borrower agreed to pay Side the principal sum of $4,583,333.33, together with interest on the terms and conditions set forth in that Note. The Note and security agreement are attached as **Exhibit A**; and the California Preliminary Injunction is attached as **Exhibit B**.

3.  Tal and Oren (together, "the Alexanders") each signed the Note as guarantors. The Note provided that in accordance with its terms, and in accordance with the security agreement contemporaneously entered into between the Alexanders and Side (the "Security Agreement"), the Alexanders "shall be liable for the payment in full of any indebtedness, interest and other amounts owing under this Note, and [Side] will have, in addition to its rights and remedies under this Note and the Security Agreement, *full recourse against any real, personal, tangible, or intangible assets of [the Alexanders], and may pursue any legal or equitable remedies that are available to it*." *See* Note, **Exhibit A**, at § 5; and Security Agreement, **Exhibit A**, at 3 (emphasis added).

4.  Following public reports that the Alexanders were accused of sexually assaulting over 30 women, were subject to at least three related lawsuits, and were under investigation for the same by the FBI and local law enforcement, Official Partners directed – with the Alexander's consent and knowledge – that Side disassociate the Alexanders' real estate licenses. This was an event of default under the terms of the Note, meaning that the entire balance of the Note became "immediately due and payable" to Side, secured by the collateral in the Security Agreement executed by the Alexanders as guarantors on the Note. *See* Note, **Exhibit A**, at § 3(b); and Security Agreement, **Exhibit A**, at 1-2.

5.  On July 22, 2024, Side promptly served an Event of Default to Official Partners, demanding payment. Official Partners refused to pay the amount due.

6. That same day, Side also provided the Event of Default to the Alexanders and demanded that they comply with their guarantor obligations under the Security Agreement, including their obligation to "perform all acts that may be necessary to maintain, preserve, protect and perfect the applicable Collateral, the Lien granted [,] and the perfection of the Lien." *See* Security Agreement, **Exhibit A**, at § 3(e).

7. Despite having multiple chances to do so, the Alexanders and Official Partners refused to perform their obligations under the Note and Security Agreement – or even to identify the collateral subject to the Security Agreement – making it impossible for Side to secure the collateral now at issue.

8. Due to these failures, on October 11, 2024, Side filed the California Lawsuit to protect its rights to the amounts owed, and its rights to the secured collateral.

### The California Preliminary Injunction

9. On November, 5, 2024, Side filed an *ex parte* application for a preliminary injunction (the "California Motion for Preliminary Injunction") freezing all of the collateral assets as defined in the Security Agreement, and enjoining the Alexanders – or their representatives, agents, directors, etc. – from alienating or divesting any portion of the collateral.

10. On December 19, 2024, the California Court issued an order granting the California Preliminary Injunction, enjoining the Alexanders from disposing of the collateral defined in the Security Agreement, including their bank account funds and their interest in certain real property. *See* California Preliminary Injunction, **Exhibit B**.

11. The California Court enjoined the Alexanders and Official Partners from disposing or transferring or selling any interest in the following three pieces of Florida real property: (1) 2687 Flamingo Drive, Miami Beach, FL 33140, (2) 2135 Lake Avenue, Miami Beach, FL 33140, and (3) 1611 W 24th Street, Miami Beach, FL 33140 (together, the "Florida Properties"). *See id*. at 2.

3

79383742;1

12. Because the Alexanders own property in Florida that is collateral pursuant to the Security Agreement – including the Florida Properties – Side files this lawsuit to domesticate or adopt the California Preliminary Injunction, issued by its sister court, to effectuate the protection of its interest in the collateral, including the Florida Properties, and its interest in the amount owed on the Note – currently totaling to over 4 million dollars – under the doctrine of comity.

### The Parties

13. Plaintiff Side is a Delaware corporation with a principal place of business in San Francisco, California.

14. Upon information and belief, Defendant Tal is an individual residing and domiciled in Florida or New York[2].

15. Defendant Oren is an individual residing and domiciled in Florida.

16. Defendant Official Partners is a limited liability company organized and existing under the laws of the State of New York.  The members of Official Partners, Tal and Oren, reside in Florida and/or New York.  Official Partners is located at 110 East 25th Street, New York, New York 10010.  As of December 27, 2024, the website for Official Partners appears to be shut down, but as of October of 2024, Oren and Tal were the only individuals listed on Official Partners' website.

### Jurisdiction and Venue

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as Plaintiff Side is a Delaware corporation headquartered in California, and Defendants are a New York limited liability company whose members reside in Florida and are individuals domiciled in Florida. Further, the amount in controversy exceeds $75,000, as the Florida Properties at issue

---

[2] Whether Tal is a resident of Florida or New York, the Court still has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

in this request for adoption and domestication of the California Preliminary Injunction alone are valued in excess of the principal of the Note, $4,583,333.33.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the property that is the subject of this action – the Florida Properties – is situated in this district.

**Count I – Temporary Injunctive Relief and Recognition and Enforcement of California Injunction Pursuant to Comity**

19. Side re-alleges and re-incorporates paragraphs 1 through 18 as if fully set forth herein.

20. A foreign interim order or injunction, issued by a foreign country or sister state, is entitled to comity where parties have been given notice and an opportunity to be heard, and where the foreign decree does not offend the public policy of the state. *Allis v. Allis*, 378 F.2d 721, 724 (5th Cir. 1967)[3] ("Our holding therefore is that as a matter of comity we will enforce the equitable decrees of a sister state affecting Texas land so long as such enforcement does not contravene an established public policy in this State"); *Pilkington Bros. P.L.C. v. AFG Indus. Inc.*, 581 F. Supp. 1039, 1045 (D. Del. 1984) (noting that "American courts enforce injunctive decrees of sister states").

21. Florida courts have "repeatedly approved the enforcement in Florida of temporary injunctions issued by foreign courts." *Cermesoni v Meneiro*, 144 So. 3d 627 (Fla. 3d DCA 2014); *Intrinsic Values Corp. v. Superintendencia de Administracion Tributaria*, 806 So. 2d. 616, 619 (Fla. 3d DCA 2002); *Nahar v. Nahar*, 656 So. 2d 225, 229 (Fla. 3d DCA 1995)[4]; *see*

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (where 11th Circuit Court of appeals adopted as binding precedent all decisions of Fifth Circuit handed down prior to October 1, 1981).

[4] Courts apply state law when analyzing whether or not to extend comity to nonfinal orders of other states or nations. *See In re Nexgenesis Holdings Ltda.*, 662 B.R. 406, 419 (Bankr.

*also Tom v. State ex rel. Tom*, 153 So. 2d 334, 336 (Fla. 2d DCA 1963) (finding that courts extend comity to give force to temporary orders from sister states).

22. Florida courts also routinely approve of the enforcement of non-final orders issued by courts in its sister states under comity. *See e.g.*, *Farley v. Farley*, 790 So. 2d 574, 575 (Fla. 4th DCA 2001) (the order of another state appointing a receiver to preserve and protect the assets, liabilities, and operations of a corporation may be given effect in Florida—with respect to Florida assets, liabilities, and operations—as a matter of comity); *see also Tom*, 153 So. 2d at 336 (finding that courts extend comity to give force to temporary child custody orders from sister states).

23. The District Court for the Northern District of California had original jurisdiction over the California Lawsuit. Notably, Defendants were notified of the California Lawsuit, were given an opportunity to be heard, were heard, and have not contested the jurisdiction of the California Court.

24. The California Preliminary Injunction does not offend Florida's public policy – in fact, it is consistent with Florida's public policy of protecting creditors from fraud and upholding negotiable instruments and security agreements such as those at issue in this case and the California Lawsuit.

25. The Alexanders own a direct or beneficial interest in the Florida Properties and potentially other collateral in Florida as defined in the Security Agreement and as enjoined by the California Preliminary Injunction.

26. This Court should recognize, enforce, and adopt the California Preliminary Injunction to prevent the Alexanders or Official Partners from dissipating any interest they have in the Florida Properties or other Florida collateral within this Court's jurisdiction.

---

S.D. Fla. 2024) (differentiating comity extended to nonfinal orders based on *state law* principles from *federal comity* principles).

27. It would be inequitable to permit Defendants from controlling, dissipating, selling, or divesting the Florida Properties or other Florida collateral as defined in the Security Agreement and as enjoined by the California Preliminary Injunction.

28. The California Court recognized that without temporary injunctive relief, the Defendants' use or disposition of the collateral described in the Security Agreement would violate and continue to cause irreparable harm to Side, as there is a risk the Defendants will hide, transfer, sell, or otherwise dispose of the Florida Properties and Florida collateral, and thus Side could be foreclosed from recovering the amounts due on the Note or recovering the collateral pursuant to the Security Agreement. *See* California Preliminary Injunction, **Exhibit B**.

29. Similarly, if this Court does not adopt the California Temporary Injunction, Defendants' use, transferal, or disposition of the Florida Properties and Florida collateral would cause irreparable harm to Side, and would continue to violate the California Temporary Injunction.

30. The California Court also determined that Side was likely to succeed on the merits of its claims to enforce the Note and Security Agreement in the California Court, and thus recognition and enforcement of the California Preliminary Injunction is justified.

31. Any harm to the Defendants would not be outweighed by the harm to Side if the California Temporary Injunction is adopted and enforced in Florida.

32. Public policy, as set forth above, supports the domestication, adoption, and enforcement of the California Preliminary Injunction.

33. There are no other available remedies available to the Side that allow Side to enforce the California Temporary Injunction in Florida other than this Court domesticating, adopting, and enforcing the California Temporary Injunction under the doctrine of comity.

34. Accordingly, this Court should domesticate, adopt, and enforce the California Preliminary Injunction and give it full force and effect as if it were entered by this Court.

**WHEREFORE**, Plaintiff Side respectfully requests that the Court: (1) enter an order adopting and domesticating the California Preliminary Injunction attached as **Exhibit B** and giving it full force and effect in this jurisdiction; and (2) for such other further relief as this Court may deem necessary and equitable.

## VERIFICATION

Under penalties as provided by law, I declare that I have read the foregoing Complaint and to the best of my knowledge the factual statements contained therein are true and correct based on my personal knowledge and information made available to me.

Name: Carmine Napolitano

Title: CFO

Signed by: *Carmine Napolitano*
6346D324340B463...

Date:  January 2, 2025                              Respectfully submitted,

                                                **AKERMAN LLP**
98 SE 7th ST
Suite 1100
Miami, FL 33131
Tel. 305-374-5600
Fax 305-374-5095

By: /s/ *Ilana Gorenstein*
      **Michael Goldberg, Esq.**
      michael.goldberg@akerman.com
      Florida Bar No.: 886602
      **Ilana Gorenstein, Esq.**
      Florida Bar No.: 57597
      ilana.gorenstein@akerman.com
      **Christopher Boyett, Esq.**
      Florida Bar No.: 1019707
      christopher.boyettjr@akerman.com

      *Counsel for Plaintiff Side, Inc.*