# EXHIBIT A

# AMENDED AND RESTATED SECURED PROMISSORY NOTE

$4,583,333.33                                                                                                                April 18, 2024
                                                                                                                San Francisco, California

Reference is made to that certain Secured Promissory Note, dated August 11, 2022 (the "***Prior Note***"), under which the undersigned borrower (the "***Borrower***") promised to pay Side, Inc. (the "***Company***") the principal sum of $5,000,000, together with accrued interest. As of April 18, 2024 (the "***Issue Date***"), each of Borrower and Company agree that the aggregate unpaid principal and accrued interest under the Prior Note totals the Principal (as defined below), and that no further amounts are due (either principal or accrued interest) under the Prior Note through the date hereof. The Prior Note is hereby amended and restated in its entirety to read, and superseded by this Amended and Restated Secured Promissory Note (the "***Note***"), as follows:

**FOR VALUE RECEIVED**, and pursuant to this Note, the Borrower promises to pay the Company at its principal executive offices the principal sum of $4,583,333.33 (the "***Principal***"), together with interest from the Issue Date on the unpaid principal balance, upon the terms and conditions specified below.

**1.** **Waiver of Default Under Prior Note**. On August 11, 2023, the Borrower failed to make a payment as required under the Prior Note, resulting in an Event of Default (as defined in the Prior Note) and triggering the application of the interest rate calculated under Section 3 of the Prior Note (the "***2023 Event of Default***"). Pursuant to Section 6 of the Prior Note, the Company may waive any term of the Prior Note by written consent. By its signature hereto, the Company hereby waives the 2023 Event of Default, effective as of the Issue Date.

**2.** **Rate of Interest, Repayment Schedule and Term**. Interest shall accrue under this Note on any unpaid principal balance at the rate of 2.85% per annum, compounded quarterly, commencing on the Issue Date. On December 31, 2024 (the "***First Payment Date***"), Borrower shall repay the Company an amount equal to $1,583,333.33 plus all interest accrued on such amount and unpaid as of such date. On the one-year anniversary of the First Payment Date, Borrower shall make payment of an amount equal to $1,000,000.00 plus all interest accrued on such amount and unpaid as of such date; on the two-year anniversary of the First Payment Date, Borrower shall make payment of an amount equal to $1,000,000.00 plus all interest accrued on such amount unpaid as of such date; and on August 10, 2027 (the "***Final Payment Date***"), Borrower shall make payment of an amount equal to all then-remaining and unpaid principal plus all interest accrued on such amount and unpaid as of such date, such that the unpaid principal balance of this Note, together with all interest accrued and unpaid to date (the "***Balance***"), shall have been satisfied and have been paid in full by the close of business on the Final Payment Date.

**3.** **Events of Default**. Notwithstanding the foregoing, the entire Balance shall become immediately due and payable upon the earliest of (each such event, an "***Event of Default***"):

(a)    the termination of the Master Services Agreement, dated as of August 2, 2021 by and among the Company and Tal Alexander, Oren Alexander and Richard Jordan and as amended by that certain First Amendment to Master Services Agreement dated August 1, 2022, that certain Second Amendment to Master Services Agreement dated June 7, 2023, and that certain Third Amendment to Master Services Agreement dated April 18, 2024 (as may be amended from time to time, the "***MSA***");

(b)    the date either Tal Alexander or Oren Alexander (each, an "***Guarantor***," and collectively, the "***Guarantors***") either (i) disassociate their real estate licenses in any

jurisdiction from the Company or (ii) associate their real estate license in any jurisdiction with a brokerage other than the Company or a Company subsidiary or affiliate;

(c) the date any of the following occurs without the prior written consent of the Company: (i) OT Official Inc. is no longer wholly owned by Tal Alexander; (ii) TO Official Inc. is no longer wholly owned by Oren Alexander; (iii) OT Official Inc. or TO Official Inc. (collectively, the "*Holding Entities*") dispose of any portion of their respective membership interests in the Borrower; (iv) the Borrower issues any debt securities; or (v) the Borrower issues any equity securities of the Borrower such that the Holding Entities collectively cease to hold a majority of the membership interests in the Borrower;

(d) the failure of the Borrower to pay when due the Balance (or any portion thereof) under this Note;

(e) the Borrower's failure to perform any obligation or agreement contained in this Note or the Guarantors' failure to perform any obligation or agreement contained in the Security Agreement (as defined below) (collectively, the "*Obligations*");

(f) the filing of a petition by or against the Borrower or the Guarantors under any provision of the Bankruptcy Reform Act (Title 11 of the United States Code), as amended or recodified from time to time, or under any other law relating to bankruptcy, insolvency, reorganization or other relief for debtors;

(g) the appointment of a receiver, trustee, custodian or liquidator of or for any part of the assets or property of the Borrower or the Guarantors;

(h) the execution by the Borrower or the Guarantors of a general assignment for the benefit of creditors;

(i) the insolvency of the Borrower or the Guarantors, or the Borrower's or the Guarantors' failure to pay any of their respective debts greater than $1,000 as they become due;

(j) the breach by the Borrower or any of the Guarantors of any term of this Note or the Security Agreement, as applicable, including the confidentiality provisions hereof; or

(k) the discovery that any representation or warranty made by the Borrower or any of the Guarantors in this Note or the Security Agreement is incorrect, false or misleading in any material respect.

4. Upon any Event of Default, the amount of the Balance due and payable shall be calculated as if interest had accrued under this Note at a rate equal to the lower of (i) the Prime Rate (as defined below) plus 5% per annum and (ii) the Highest Lawful Rate (as defined below), compounded annually, beginning on the date of the Event of Default (rather than the interest rate stated in Section 1 above). "*Prime Rate*" means the rate of interest last quoted by *The Wall Street Journal* as the "Prime Rate" in the U.S. or if *The Wall Street Journal* ceases to quote such rate, the highest per annum interest rate published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519) (Selected Interest Rates) as the "bank prime loan" rate or, if such rate is no longer quoted therein, any similar rate quoted therein (as determined by the Company) or any similar release by the Federal Reserve Board (as determined by the Company). "*Highest Lawful Rate*" means the maximum non-usurious rate of interest, as in effect from time to time, which may be charged, contracted for, reserved, received or collected by the Company in connection with this Note under applicable law.

5. **Security and Recourse**. The Borrower's Obligations under this Note and the Guarantors' Obligations under the Amended and Restated Security Agreement, by and between the Company and Guarantors, dated April 18, 2024 (the "*Security Agreement*") shall be secured by a first-priority security interest in all of the Collateral, pursuant to the Security Agreement, all terms of which are incorporated herein by this reference. The Guarantors shall be liable for the payment in full of any indebtedness, interest and other amounts owing under this Note, and the Company will have, in addition to its rights and remedies under this Note and the Security Agreement, full recourse against any real, personal, tangible or intangible assets of the Guarantors, and may pursue any legal or equitable remedies that are available to it.

In the event that the Guarantors only dispose of a portion of the Collateral, the sales proceeds shall be applied to the unpaid principal sum and accrued interest under this Note to the extent required by the Security Agreement. Upon the occurrence of any Event of Default, the Company may, at its election, declare this Note and all other indebtedness secured hereunder to be immediately due and payable and may exercise any or all of the rights and remedies granted to a secured party under the provisions of the Uniform Commercial Code (as now or hereafter in effect), including (without limitation) the power (i) to dispose of the Collateral by public or private sale, (ii) to accept the Collateral in full payment of this Note and all other indebtedness secured hereunder, or (iii) to withhold any and all commissions or other compensation otherwise due to Borrower or Guarantors under the MSA, Guarantors' independent contractor agreements with the Company ("**ICAs**"), or any other written agreement between Guarantors and Company (the "*Withholding*," and such amount, the "*Withholding Amount*") until the Withholding Amount equals the indebtedness secured hereunder, at which point the Company shall cease the Withholding. In the event that the Company accepts the Collateral in full payment of this Note and all other indebtedness secured hereunder, then the fair market value of the Collateral shall be determined by the Board of Directors of the Company in good faith. Any proceeds realized from the disposition of the Collateral pursuant to the foregoing power of sale shall be applied first to the payment of reasonable expenses incurred by the Company in connection with the disposition, then to the payment of this Note and finally to any other indebtedness secured hereunder. Any surplus proceeds shall be paid over to the Guarantors. However, in the event such proceeds prove insufficient to satisfy all Obligations of the Borrower under this Note or of the Guarantors under the Security Agreement, then no amount shall be paid over to the Guarantors.

6. **Collection and Attorneys' Fees**. If any legal action is instituted to collect on this Note, the Borrower promises to pay all reasonable costs and expenses (including reasonable attorney's fees) incurred by the Company in connection with such legal action; provided that Borrower is provided with at least seven days' notice prior to the commencement of such legal action.

7. **Waiver**. No previous waiver and no failure or delay by the Company or the Borrower in acting with respect to the terms of this Note, or by the Company or the Guarantors in acting with respect to the terms of the Security Agreement, shall constitute a waiver of any breach, default or failure of condition under this Note, the Security Agreement or the Obligations secured thereby, as applicable. A waiver of any term of this Note, the Security Agreement or of any of the Obligations secured must be made in writing and signed by a duly authorized officer of the Company and shall be limited to the express terms of such waiver. The Borrower hereby expressly waives presentment and demand for payment when any payments are due under this Note.

8. **Confidentiality**. Each party (the "*Receiving Party*") agrees that it will keep confidential and will not disclose or use for any purpose any information about the terms of this Note, the Security Agreement and any confidential information obtained from any other party (the "*Disclosing Party*") in connection herewith and therewith, unless any such information (a) is known or becomes known to the public in general (other than as a result of a breach of this Section 7 by the Receiving Party), or (b) is or has been made known or disclosed to the Receiving Party by a third party without a breach of any confidentiality obligations by such third party; *provided*, *however*, that the Receiving Party may disclose

3

such information: (i) to its directors, officers, attorneys, accountants, consultants and other professionals solely to the extent necessary to obtain their services in connection with this Note and/or the Security Agreement, *provided*, that such persons agree to maintain the confidentiality of such information in accordance herewith; or (ii) as may be required by law, *provided*, that the Receiving Party promptly notifies the Disclosing Party in advance of such disclosure and agrees to cooperate to take reasonable steps to minimize the extent of any such required disclosure.

9. **Conflicting Agreements**. In the event of any inconsistencies between the terms of this Note, the Security Agreement and the terms of any other document related to the loan evidenced by this Note (including the MSA), the terms of this Note shall prevail.

10. **Severability**. In the event that any of the provisions of this Note are held to be invalid or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Note.

11. **Amendment**. This Note may be amended or modified only by a written agreement signed by all parties to this Note.

12. **Governing Law**. This Note shall be construed in accordance with the laws of the State of California (without regard to its choice-of-law provisions). All claims, controversies or disputes arising under or in connection with this Note will be subject to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California.

13. **Counterparts**. This Note may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument. Original signatures hereto may be delivered by facsimile or by portable data format (.pdf), which shall be deemed originals.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the undersigned have executed this Secured Promissory Note as of the Issue Date first stated above.

| THE BORROWER: | | THE COMPANY: | |
|---|---|---|---|
| **OFFICIAL PARTNERS NEW YORK, LLC** | | **SIDE, INC.** | |
| By: _[signature]_ | 4/22/2024 | By: _Guy Gal_ | 4/18/2024 |
| Name: Richard Jordan | | Name: Guy Gal | |
| Title: Co-founder and CEO | | Title: Chief Executive Officer | |
| Address: | 110 East 25th St<br>New York, NY 10010 | Address: | 580 4th Street<br>San Francisco, CA 94107<br>Attention: Chief Executive Officer |
| Email: | richard@officialpartners.com | Email: | guy@sideinc.com |

**THE GUARANTORS:**

**TAL ALEXANDER**

By: _Tal Alexander_   4/20/2024

Address:  110 East 25th St
          New York, NY 10010

Email:    tal@officialpartners.com


**OREN ALEXANDER**

By: _Oren Alexander_   4/18/2024

Address:  110 East 25th St
          New York, NY 10010

Email:    oren@officialpartners.com


**[SIGNATURE PAGE TO SECURED PROMISSORY NOTE]**

**SECURITY AGREEMENT**

## AMENDED AND RESTATED SECURITY AGREEMENT

This Amended and Restated Security Agreement (this "*Security Agreement*") is made as of April 18, 2024 (the "*Issue Date*"), by and among Side, Inc., a Delaware corporation (the "*Company*"), Tal Alexander, and Oren Alexander (each, a "*Guarantor*," and collectively, the "*Guarantors*").

## RECITALS

WHEREAS, the Company and the Guarantors are parties to that certain Security Agreement dated August 11, 2022 (the "*Prior Agreement*") made in order to secure payment of all agreements and obligations of Official Partners New York, LLC, a New York limited liability company (the "*Borrower*") to the Company under the Secured Promissory Note dated August 11, 2022 (the "*Prior Note*").

WHEREAS, the Company, the Borrower, and the Guarantors agreed to amend and restate the Prior Note, in the form of the Amended and Restated Secured Promissory Note dated April 18, 2024 (the "*Note*").

WHEREAS, the Company and the Guarantors desire to amend and restate the Prior Agreement to secure the payment and obligations of the Borrower under the Note.

WHEREAS, pursuant to Section 5(g) of the Prior Agreement the Prior Agreement may be amended with the written agreement of the Company and the Guarantors.

NOW THEREFORE, the parties hereby agree as follows.

In order to secure payment of all agreements and obligations of the Borrower to the Company, under Note in the principal amount of $4,583,333.33, the Guarantors hereby grant to the Company a security interest in, and assign, transfer and pledge to the Company, all of the assets and property of each Guarantor described in Schedule A attached hereto, whether now existing or hereafter from time to time arising or acquired (collectively, the "*Collateral*").

**1.     Definitions and Interpretation**.  When used in this Security Agreement, the following terms have the following respective meanings:

"*Intellectual Property*" means all intellectual and similar property of every kind and nature now owned or hereafter acquired by each Guarantor, including inventions, designs, patents (whether registered or unregistered), copyrights (whether registered or unregistered), trademarks (whether registered or unregistered), trade secrets, domain names, confidential or proprietary technical and business information, know-how, methods, processes, drawings, specifications or other data or information and all memoranda, notes and records with respect to any research and development, software and databases and all embodiments or fixations thereof whether in tangible or intangible form or contained on magnetic media readable by machine together with all such magnetic media and related documentation, registrations and franchises, and all additions, improvements and accessions to, and books and records describing or used in connection with, any of the foregoing.

"*Lien*" means any mortgage, deed of trust, pledge, security interest, assignment, deposit arrangement, charge or encumbrance, or other type of lien.

"*Permitted Liens*" means (a) Liens for taxes not yet delinquent or Liens for taxes being contested in good faith and by appropriate proceedings for which adequate reserves have been established; (b) Liens in respect of property or assets imposed by law which were incurred in the ordinary course of business, such as carriers', warehousemen's, materialmen's and mechanics' Liens and other similar Liens arising in

the ordinary course of business which are not delinquent or remain payable without penalty or which are being contested in good faith and by appropriate proceedings; (c) Liens incurred or deposits made in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security, and other Liens to secure the performance of tenders, statutory obligations, contract bids, government contracts, performance and return of money bonds and other similar obligations, incurred in the ordinary course of business; (d) Liens upon any equipment or other property acquired or held by each Guarantor to secure the purchase price of such equipment or other property or indebtedness incurred solely for the purpose of financing the acquisition of such equipment or other property, so long as such Lien extends only to the equipment or other property financed, and any accessions, replacements, substitutions and proceeds (including insurance proceeds) thereof or thereto; and (e) trade credit or payables incurred in the ordinary course of business.

"*UCC*" means the Uniform Commercial Code as in effect in the State of California from time to time.

All capitalized terms not otherwise defined herein shall have the respective meanings given in the Note. Unless otherwise defined herein, all terms defined in the UCC have the respective meanings given to those terms in the UCC.

2. **Representations and Warranties**. Each Guarantor represents and warrants to the Company that: (a) each Guarantor is the owner of the applicable Collateral (or, in the case of after-acquired Collateral, at the time each Guarantor acquires rights in the applicable Collateral, will be the owner thereof) and that no other Person has (or, in the case of after-acquired Collateral, at the time each Guarantor acquires rights therein, will have) any right, title, claim or interest (by way of Lien or otherwise) in, against or to the applicable Collateral, other than Permitted Liens; (b) upon the filing of UCC-1 financing statements in the appropriate filing offices, the Company has (or in the case of after-acquired Collateral, at the time each Guarantor acquires rights therein, will have) a perfected security interest in the applicable Collateral to the extent that a security interest in the applicable Collateral can be perfected by such filing, except for Permitted Liens; (c) all payment intangibles are genuine and enforceable against the party obligated to pay the same; (d) the originals of all documents evidencing all accounts receivable and payment intangibles of each Guarantor and the only original books of account and records of each Guarantor relating thereto are, and will continue to be, kept at the address of each Guarantor set forth on the signature page of this Security Agreement; and (e) this Security Agreement, when executed and delivered by each Guarantor, shall constitute valid and binding obligations of each Guarantor, enforceable in accordance with its terms, except (i) as limited by laws of general application relating to bankruptcy, insolvency and the relief of debtors, and (ii) as limited by rules of law governing specific performance, injunctive relief or other equitable remedies and by general principles of equity.

3. **Covenants Relating to Collateral**. Each Guarantor hereby agrees: (a) to perform all acts that may be necessary to maintain, preserve, protect and perfect the applicable Collateral, the Lien granted herein and the perfection of such Lien, except for Permitted Liens; (b) not to use or permit any applicable Collateral to be used (i) in violation in any material respect of any applicable law, rule or regulation, or (ii) in violation of any policy of insurance covering the applicable Collateral; (c) to pay promptly when due all taxes and other governmental charges, all Liens (other than Permitted Liens) and all other charges now or hereafter imposed upon or affecting any applicable Collateral; (d) without written notice to the Company, not to change each Guarantor's name or residence (or, if a Borrower has more than one place of residence, its primary residence), or the office in which a Guarantor's records relating to accounts receivable and payment intangibles are kept; (e) to procure, execute and deliver from time to time any endorsements, assignments, financing statements and other writings reasonably deemed necessary or appropriate by the Company to perfect, maintain and protect its Lien hereunder and to deliver promptly upon the request of the Company all originals of applicable Collateral consisting of instruments.

4. **Default and Remedies**.

    (a) <u>Default</u>. The Guarantors shall be deemed in default under this Security Agreement upon the occurrence and during the continuance of an Event of Default (as defined in the Note).

    (b) <u>Remedies</u>. Upon the occurrence and during the continuance of any such Event of Default, the Company shall have the rights of a secured creditor under the UCC, all rights granted by this Security Agreement and by law, including the right to require each Guarantor to assemble the applicable Collateral and make it available to the Company at a place to be designated by the Company. Each Guarantor hereby agrees that ten days' notice of any intended sale or disposition of any Collateral is reasonable. In furtherance of the Company's rights hereunder, each Guarantor hereby grants to the Company an irrevocable, non-exclusive license, exercisable without royalty or other payment by the Company, and only in connection with the exercise of remedies hereunder, to use, license or sublicense any patent, trademark, trade name, copyright or other Intellectual Property now or hereafter owned by each Guarantor together with the right, title or interest together with the right of access to all media in which any of the foregoing may be recorded or stored.

    (c) <u>Application of Collateral Proceeds</u>. The proceeds and/or avails of the Collateral, or any part thereof, and the proceeds and the avails of any remedy hereunder (as well as any other amounts of any kind held by the Company at the time of, or received by the Company after, the occurrence of an Event of Default) shall be paid to and applied as follows:

    (i) <u>First</u>, to the payment of reasonable costs and expenses, including all amounts expended to preserve the value of the Collateral, of foreclosure or suit, if any, and of such sale and the exercise of any other rights or remedies, and of all proper fees, expenses, liability and advances, including reasonable legal expenses and attorneys' fees, incurred or made hereunder by the Company;

    (ii) <u>Second</u>, to the payment to the Company of the amount then owing or unpaid on the Note, and in case such proceeds shall be insufficient to pay in full the whole amount so due, owing or unpaid upon the Note then such proceeds shall be applied first to accrued interest and second to outstanding principal;

    (iii) <u>Third</u>, to the payment of other amounts then payable to the Company under the Note; and

    (iv) <u>Fourth</u>, to the payment of the surplus, if any, to the Guarantors, its successors and assigns, or to whosoever may be lawfully entitled to receive the same.

5. **Miscellaneous**.

    (d) <u>Termination of Security Interest</u>. Upon the payment in full of all Obligations, the security interest granted herein shall terminate and all rights to the Collateral shall revert to each Guarantor. Upon such termination the Company hereby authorize each such Guarantor to file any UCC termination statements necessary to effect such termination and the Company will execute and deliver to each such Guarantor any additional documents or instruments as each such Guarantor shall reasonably request to evidence such termination.

(e) <u>Nonwaiver</u>. No failure or delay on the Company's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(f) <u>Waiver</u>. No previous waiver and no failure or delay by the Company, the Borrower or the Guarantors in acting with respect to the terms of the Note or this Security Agreement shall constitute a waiver of any breach, default or failure of condition under the Note, this Security Agreement or the Obligations secured thereby. A waiver of any term of the Note, this Security Agreement or of any of the Obligations secured must be made in writing and signed by a duly authorized officer of the respective party and shall be limited to the express terms of such waiver.

(g) <u>Amendment</u>. This Security Agreement may be amended or modified only by a written agreement signed by the Company and the Guarantors.

(h) <u>Assignments</u>. This Security Agreement shall be binding upon and inure to the benefit of the Company and each Guarantor and their respective successors and assigns; *provided*, *however*, that each Guarantor may not sell, assign or delegate rights and obligations hereunder without the prior written consent of the Company.

(i) <u>Cumulative Rights, etc</u>. The rights, powers and remedies of the Company under this Security Agreement shall be in addition to all rights, powers and remedies given to the Company by virtue of any applicable law, rule or regulation of any governmental authority, the Note, or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing the Company's rights hereunder. The Guarantors waive any right to require the Company to proceed against any person or entity or to exhaust any Collateral or to pursue any remedy in the Company's power.

(j) <u>Severability</u>. In the event that any of the provisions of this Security Agreement are held to be invalid or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Security Agreement .

(k) <u>Expenses</u>. Each Guarantor shall pay on demand all reasonable fees and expenses, including reasonable attorneys' fees and expenses, incurred by the Company in connection with custody, preservation or sale of, or other realization on, any of the Collateral or the enforcement or attempt to enforce any of the Obligations which is not performed as and when required by this Security Agreement.

(l) <u>Conflicting Agreements</u>. In the event of any inconsistencies between the terms of this Security Agreement, the Note and the terms of any other document related to the loan evidenced by the Note (including the MSA), the terms of the Note shall prevail.

(m) <u>Entire Agreement</u>. This Security Agreement, together with all amendments hereto, constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes any and all prior negotiations, correspondence, agreements, understandings duties or obligations between any of the parties with respect to the subject matter hereof. The Prior Agreement is hereby amended and superseded in its entirety and restated herein. Such amendment and restatement is effective upon the execution of this Security Agreement by the Company and the Guarantors required for an amendment pursuant to Section 5(g) of the Prior Agreement.

DocuSign Envelope ID: 404D44D8-AB01-403E-A1C8-D015C2876E49

(n) <u>Governing Law</u>.  This Security Agreement shall be construed in accordance with the laws of the State of California (without regard to its choice-of-law provisions) (except to the extent governed by the UCC).  All claims, controversies or disputes arising under or in connection with this Security Agreement will be subject to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California.

(o) <u>Counterparts</u>.  This Security Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.  Original signatures hereto may be delivered by facsimile or by portable data format (.pdf), which shall be deemed originals.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the undersigned have executed this Security Agreement as of the Issue Date first stated above.

**THE COMPANY:**

**SIDE, INC.**

By: *Guy Gal*  4/18/2024
Name: Guy Gal
Title: Chief Executive Officer

Address: 580 4th Street
San Francisco, CA 94107
Attention: Chief Executive Officer

Email: guy@sideinc.com

**THE GUARANTORS:**

**TAL ALEXANDER**

By: *Tal Alexander*  4/20/2024

Address: 110 East 25th St
New York, NY 10010

Email: tal@officialpartners.com

**OREN ALEXANDER**

By: *Oren Alexander*  4/18/2024

Address: 110 East 25th St
New York, NY 10010

Email: oren@officialpartners.com

**[SIGNATURE PAGE TO SECURITY AGREEMENT]**

## SCHEDULE A

## COLLATERAL

All right, title, interest, claims and demands of each Guarantor in and to the following property:

(i) Such Guarantor's equity interests in the Holding Entities (as defined in the Note);

(ii) All Accounts;

(iii) All Chattel Paper;

(iv) All Deposit Accounts and cash;

(v) All Documents;

(vi) All Equipment;

(vii) All General Intangibles including Intellectual Property (as defined below);

(viii) All Goods;

(ix) All Instruments;

(x) All Inventory;

(xi) All Investment Property;

(xii) All Letter-of-Credit Rights;

(xiii) To the extent not otherwise included, all Proceeds and products of any and all of the foregoing, and all accessions to, substitutions and replacements for, and rents and profits of each of the foregoing.

All capitalized terms used in this Schedule A and not otherwise defined in this Security Agreement, shall have the respective meanings given to such terms in the Uniform Commercial Code of the State of California as in effect from time to time.